UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**RONALD LINHARES**
    **Plaintiff,**

CIVIL ACTION
NO: 1:20-CV-12035-IT

v.

**WOODS HOLE, MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY**
    **Defendant.**

### DEFENDANT, WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL CERTAIN DOCUMENTS AND DEPOSITIONS [ECF NO. 60]

Now comes the Defendant, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority ("Defendant" or the "Steamship Authority"), in the above-entitled action, by its undersigned counsel, Clinton & Muzyka, P.C., and respectfully submits this Memorandum in Opposition ("Opposition") to Plaintiff's Motion to Compel Certain Documents and Depositions ("Plaintiff's Motion"). [ECF NO. 60].

Plaintiff, Ronald Linhares ("Plaintiff"), was employed by Defendant as a seaman. He claims that on January 13, 2020, he slipped and fell on a stairway on Defendant's vessel the M/V NANTUCKET (the "Vessel") and injured his right knee. At his deposition on September 19, 2022, Plaintiff testified that this alleged injury occurred on a specific tread, of a specific step, on a specific stairway onboard the Vessel. *See Exhibit 3 to his deposition.* He also claims that in March, 2020, he had difficulty on another stairway, in his home, and injured his left knee. He also seeks punitive damages, claiming that Defendant improperly delayed in payment of maintenance and cure.

There is no dispute that Plaintiff has a prior history of substantial problems with both his knees, and that he had surgery on his left knee in 2016 and on his right knee in 2017, before the alleged incidents in 2020. Consequently, even if Plaintiff is able to prove that the Defendant is somehow liable for causing him to slip on a specific step, any recovery should properly be limited to provable damages for exacerbating the condition of Plaintiff's knees.

Below, Defendant addresses the five points raised in Plaintiff's Motion in the order set forth therein. Defendant submits that for the reasons below Plaintiff's Motion to Compel should properly be denied.

## ARGUMENT

**I.   THE CONSTRUCTION PLANS, DESIGN APPROVALS AND CERTIFICATES PLAINTIFF HAS DEMANDED ARE IRRELEVANT, AND PLAINTIFF'S REQUESTS ARE WILDLY OVERLY BROAD AND WHOLLY DISPROPORTIONATE TO THE NEEDS OF THIS CASE.**

The M/V NANTUCKET was built in 1974, and is 217 feet long. Plaintiff has testified that his alleged injury occurred on one tread, on one step, on one of the Vessel's stairways, on January 13, 2020, or some 46 years after the Vessel was launched. Plaintiff's testimony renders inquiry into any part of the Vessel's structure other than the specific step and the tread at issue completely irrelevant.

On Friday, September 16, 2022, Plaintiff's counsel and Plaintiff's counsel's investigator conducted a Rule 34 examination onboard the Vessel of the stairway, step, and tread where Plaintiff claims to have been injured. At Plaintiff's counsel request, the tread itself was thereafter removed from the Vessel and is being retained for joint inspection. After the Vessel inspection on Friday, September 16, 2022, Plaintiff's counsel requested certain additional documents in a letter which Defendant's counsel received on Monday, September 19, 2022. [ECF no. 60-3, page 2 of

3]. Defendant agreed to treat Plaintiff's letter request for additional documents as having been made under Rule 34.

The requests in Plaintiff's letter were set forth in bullet points, in part as follows:

- The vessel's plans, including but not limited to the "construction plans" referenced in defendants' [sic] Answer to Plaintiff's Second Set of Interrogatories ("2d.ATI), #13;

- The design approval referenced in 2d. ATI #9;

- The initial Certificate of Inspection and each Annual Certificate of Inspection (referenced in 2d. ATI #9 and 13) ….[1]

Defendant had previously produced a General Arrangement Plan for the Vessel's Upper Decks. Defendant recently located and has produced an Outboard Profile Plan, a General Arrangement Plan for the Holds and Main Decks, and a 1973 plan showing handrail and typical tread and riser details for the Vessel's passenger stairways. Defendant submits, however, that the Vessel's construction plans, which pre-date the ship's completion in 1974, are irrelevant. Even assuming that additional plans from the early 1970s could be located, the construction plans will detail the Vessel's hull, framing, structure, decks, and other areas, but not the single tread on the step at issue in this case. Moreover, Plaintiff had the opportunity on September 16, 2022, to inspect and measure the tread, step, and stairway at issue as it was in fact constructed and as it presently exists. The Vessel's early 1970s construction plans, if in existence, are moreover wholly disproportionate to the needs of this slip and fall case.

---

[1] *Defendant timely objected to these letter requests on the grounds that they sought documents not relevant to the claims and defenses in this action, were not reasonably calculated to lead to the discovery of admissible evidence, and were not proportional to the needs of the case, in that they it call for the production of documents concerning parts of the Vessel having nothing to do with Plaintiff's alleged slip and fall on January 13, 2020.*

The Vessel's design approvals, issued by the U.S. Coast Guard before the Vessel's 1974 completion date,[2] are also irrelevant and disproportionate.

The "initial [1974] Certificate of Inspection and *each Annual* Certificate of Inspection," or *some forty-six years* of Certificates of Inspection, will tell Plaintiff nothing as to the condition of the tread at issue in January 2020.

Plaintiff's pursuit of the foregoing documents, having no utility whatsoever given Plaintiff's testimony that his alleged injury occurred on one tread, of one step, on one stairway, suggests that Plaintiff's requests do not comport with Rule 26(g). Defendant submits that Plaintiff's requests in the first three bullet points of its September 16, 2022, letter are therefore improper.

### II. DOCUMENTS RELATING TO THE TREADS MAY BE AVAILABLE TO PLAINTIFF FROM THE SHIPYARDS WHICH INSTALLED THEM BY SUBPOENA.[3]

Defendant previously produced nearly a thousand pages of Vessel work orders, consisting of all of its work orders from January 1, 2015, through August 15, 2022, and many other documents to Plaintiff. Defendant later learned, and explained to Plaintiff's counsel, that the fact that no reference specifically relating to installation of stair treads might exist in the work orders did not necessarily indicate that no tread replacement had occurred. The Vessel visits a shipyard twice in a five-year period and such installation might be performed by the yard and not by the Steamship Authority. Further, as the shipyard contracts are agreed on a lumpsum basis, documents relating

---

[2] *Despite the fact that the design approval are irrelevant Defendant nonetheless noted in an LR 37.1 conference that any design approval issued by the U.S. Coast Guard should be available from the U.S. Coast Guard through a Freedom of Information Act (FOIA) request. Of course, "[w]here both parties have the ability to secure copies of the requested evidence from a third-party custodian, the obligation to produce the document to the other party does not exist." Dallas Buyers Club, LLC v. Huszar, 2019 WL 5856460 (D. Ore. 2019) (citation omitted).*

[3] *Plaintiff's Motion shifts in mid-paragraph at page 5 from a discussion of the foregoing construction plans, design approvals and Certificates of Inspection, to a discussion as to records concerning the treads, and then continues that discussion in its Section II.*

Case 1:20-cv-12035-IT   Document 61   Filed 11/22/22   Page 5 of 11

5

to the acquisition and installation of materials such as stair treads will be in the possession of the shipyards and not of the Steamship Authority.

Defendant has now located and produced one document, an unsigned Change Order to a shipyard contract, prepared by the shipyard, relating to tread replacement. Defendant advised Plaintiff previously in an LR 37.1 conference that additional documents relating to the shipyard's work might of course also be available to Plaintiff from the shipyard by subpoena.

Plaintiff cites various cases at page 5 of Plaintiff's Motion for the unremarkable proposition that a party must produce requested documents (which are not otherwise objectionable) which are within its "possession, custody or control." As Wright & Miller note in 8B *Federal Practice and Procedure* § 2210 (3d ed.), that phrase "has always been in the rule…." Plaintiff goes on to assert, however, without basis or citation to authority, that the "owners of the Vessel would have the *right to demand* records related to the services provided to their vessel." Plaintiff's Motion at p. 5-6 (emphasis added). Plaintiff then falsely asserts that "the Defendant is not claiming otherwise." *Id*. at 6. Of course, the ability *to make a demand* for documents of a third-party shipyard is obviously not the same thing as the ability *to control documents* in the hands of a third-party shipyard, as a demand made without the right to control might be ignored. Moreover, Defendant certainly *is* claiming that it has no right to control documents in the hands of the shipyard – that's why Defendant suggested to Plaintiff that it might want to subpoena the shipyard.

Wright and Miller in their section concerning possession, custody and control in fact discuss an Eleventh Circuit admiralty case involving a vessel owner's *inability* to control documents in the hands of a shipyard – even though the vessel owner thought it could access such documents – as an example of the *absence* of control. *Federal Practice & Procedure* § 2210 n. 13-15 *citing Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984). In reversing the lower court in

Case 1:20-cv-12035-IT Document 61 Filed 11/22/22 Page 6 of 11

6

*Searock*, the Eleventh Circuit concluded that the vessel owner's misplaced assumption that it could obtain documents from a shipyard did not constitute control in the sense meant by Rule 34. 736 F.2d at 653-54.

Moreover and because Plaintiff in this case could himself subpoena documents in the hands of the shipyard, the Steamship Authority has no obligation to produce them. The Second Circuit has stated that it thought "it fairly obvious that a party need not seek … documents from third parties if compulsory process against the third parties is available to the party seeking the documents." *Shcherbakovskiy v. Da Capo Al Fine, Ltd*., 490 F.3d 130, 138 (2d Cir. 2007). In *Nosal v. Granit Park, LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010), Magistrate Judge Maas, citing *Shcherbakovskiy*, described that proposition as "settled law." In *Nosal*, a personal injury plaintiff who slipped in a hotel bathtub and sued the hotel wanted documents in the hands of a contractor the hotel had hired to refinish bathtubs. The Court observed that if the plaintiff's counsel wanted the documents, plaintiff's counsel was free to subpoena them. *Id.*

The Steamship Authority has produced all of its work order documents for the M/V NANTUCKET for the period from January 1, 2015 through August 15, 2022, and the unsigned Thames Shipyard change order it recently located. If Plaintiff wants additional shipyard documents, as Defendant's counsel previously advised Plaintiff's counsel, then Plaintiff's counsel can subpoena them.

### III. THE POST-INCIDENT SURVEILLANCE VIDEO HAS BEEN PRODUCED.

Defendant's counsel also advised Plaintiff's counsel on November 3, 2022, before Plaintiff filed Plaintiff's Motion on November 8, 2022, that a post-incident surveillance video of Plaintiff will be produced. It now has been produced, and Plaintiff's Motion to compel it is moot.

**IV.    PLAINTIFF HAS NOT MADE A PARTICULARIZED SHOWING WHY MORE THAN TEN DEPOSITIONS ARE NECESSARY IN THIS SLIP AND FALL CASE, AND THE REASON HE OFFERS IS DISINGENUOUS.**

Plaintiff's Motion names eight crewmembers it wishes to depose, a number which cause the total number of the depositions Plaintiff wishes to conduct to exceed the ten depositions permitted under Rule 30(a)(2)(A)(i) without leave of court. Upon information and belief, none of these eight individuals witnessed Plaintiff's alleged injury. Defendant's counsel reminded Plaintiff of Rule 30(a)'s ten deposition limit without leave of court, and indeed specifically noted it in Defendant's Opposition to Plaintiff's Second Request for Leave to Amend filed on October 14, 2022, at p. 5. [ECF No. 55 at page 5 of 6].

Rule 30(a) provides that leave to take more than ten depositions is granted "to the extent consistent with Rules 26(b)(1) and (b)(2) …." Rule 26(b)(1) of course provides in pertinent part that:

> *Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense** and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.*
> (emphasis added).

Rule 26(b)(2) states in pertinent part that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)     the discovery sought is unreasonably cumulative or duplicative, or **can be obtained from some other source that is more convenient, less burdensome, or less expensive;**
>
> (ii)    the party seeking discovery **has had ample opportunity** to obtain the information by discovery in the action; or
>
> (iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Case 1:20-cv-12035-IT Document 61 Filed 11/22/22 Page 8 of 11

8

(emphasis added).

The Southern District of Ohio has held as to the ten-deposition limit under Rule 30 as follows:

> *Because this **limit is intended to curb abusive discovery practices**, it stands to reason that a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are necessary. Further, **the moving party must make a particularized showing why extra depositions are necessary.** A district court has the discretion (and perhaps the obligation) to deny leave to take additional depositions when no good reason to do so has been presented.*

*Talismanic Properties, LLC v. Tipp City, Ohio*, 309 F.Supp.3d 488, 497 (S.D. Ohio 2017) *quoting Moore v. Abbott Labs.*, 2009 WL 73876, at *1 (S.D. Ohio 2009) (emphasis added).

Plaintiff has not attempted to make a particularized showing that he should be entitled to more than ten depositions in this personal injury slip and fall claim. Plaintiff's Motion claims that, as "crewmen, able bodied seamen and/or maintenance personnel," the named individuals "are responsible for the condition of the Vessel on which Plaintiff's accident allegedly occurred." Plaintiff's Motion at p. 9. Plaintiff's Motion further claims that Plaintiff anticipates that Defendant will argue that "there have been no other accidents, no other slipping events, and/or no other complaints about the [allegedly] worn down surface of the vessel's threads [*sic*]"[4] and that "[t]he depositions of these [eight] individuals is necessary to establish whether or not this defense is factually accurate." *Id*. There are several problems with this argument.

First, the eight named individuals are not the only persons responsible for maintaining the Vessel – there are other individuals who also serve aboard and/or work on the Vessel, as well as

---

[4] ***Of course, Defendant does not claim that the surface of the Vessel's stair treads was worn down – Plaintiff apparently does.***

additional shoreside personnel such as port engineers.[5]  Consequently, deposing only the eight named individuals would obviously not establish what Plaintiff claims it will.  Second, the information sought – whether there have been no reports of other slips on the Vessel's stairways or complaints concerning the stair treads – obviously could be, or could have been, obtained in a manner which would be much more convenient and less burdensome: in an interrogatory, or in a Rule 30(b)(6) deposition.  Third, taking eight additional depositions is simply far out of proportion to the needs of this slip and fall case.  Fourth, the burden on Defendant of taking eight employees away from their assigned tasks (and paying them for their time) so that they could be prepared for and then travel to Plaintiff's office in Braintree for their depositions, far outweighs any benefit to Plaintiff.

Defendant respectfully submits that Plaintiff's baseless call to depose more than ten witnesses in this case is itself an abusive discovery practice and violates Rule 26(g)(1)(B)(ii) and/or (iii).  It seems solely intended to harass, cause needless increase in the cost of the litigation, and seems unreasonable and unduly burdensome given the needs of the case.

### V.     DR. SILISKI's REPORT IS NOT YET COMPLETED.

As Defendant's counsel has advised Plaintiff's counsel, Dr. Siliski's report will of course be produced as required by Rule 35.  Defendant's counsel understands from Dr. Siliski's office that his report has not yet been completed.  As soon as it is, it will be provided to Plaintiff's counsel.

---

[5]  *Though that fact might seem obvious, Defendant's counsel so advised Plaintiff's counsel before Plaintiff's Motion was filed.*

## CONCLUSION

For the foregoing reasons, Defendant Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, respectfully submits that Plaintiff's Motion to Compel Certain Documents and Depositions should properly be denied.

**DEFENDANT,
WOODS HOLE, MARTHA'S
VINEYARD & NANTUCKET
STEAMSHIP AUTHORITY**

**By its attorneys**,
**CLINTON & MUZYKA, P.C.**

*/s/ Thomas J. Muzyka*
**Thomas J. Muzyka**
**BBO NO: 365540**
**Brad Gandrup**
**BBO NO. 549794**
Board of Trade Building
One India Street, Suite 200
Boston, MA 02109
Tel.: 617-723-9165
Fax: 617-720-3489
Email: tmuzyka@clinmuzyka.com

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2022**.**

*/s/ Thomas J. Muzyka*
Thomas J. Muzyka

