UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD LINHARES,              *
                                *
       Plaintiff,          *
                                *
       v.              *    Civil Action No. 1:20-cv-12035-IT
                                *
WOODS HOLE, MARTHA'S VINEYARD,  *
AND NANTUCKET STEAMSHIP     *
AUTHORITY,               *
                                *
       Defendant.      *

ORDER

December 16, 2022

TALWANI, D.J.

       Pending before the court is Plaintiff Ronald Linhares's Motion to Compel [Doc. No. 60]

Defendant Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority (the

"Steamship Authority") to produce certain documents, surveillance materials, and depositions.

For the reasons set forth herein, the motion is GRANTED IN PART and DENIED IN PART.

**I.    Background**

       On July 21, 2021, Linhares filed his First Amended Complaint ("Complaint") [Doc. No.

27] against the Steamship Authority related to injuries Linhares allegedly sustained while

employed by the Steamship Authority as a crew member on the M/V NANTUCKET (the

"Vessel"). Plaintiff alleges that on January 13, 2020, he slipped on a stairwell in the Vessel and

on to his knees because the stairs were not properly constructed of and/or treated with a

sufficiently maintained non-skid surface. First Am. Compl. ¶¶ 9-10 [Doc. No. 27]. Plaintiff

alleges that as a result of the fall, he suffered an injury to his right knee. Id. at ¶ 11. Plaintiff also

brings claims against the Steamship Authority for failure of maintenance and cure with respect to his injuries related to the fall. Id. at ¶¶ 24-29.

On July 25, 2022, Steamship Authority provided its Answers to Plaintiff's Second Set of Interrogatories ("Answers to Interrogatories") [Doc. No. 60-2]. On September 16, 2022, Linhares's counsel conducted a Rule 34 examination onboard the Vessel of the stairway, step, and tread where Linhares claims to have been injured. See Ex. C, Sept. 16, 2022 Letter [Doc. No. 60-3] (acknowledging completion of vessel inspection). That same day, Linhares requested that the Steamship Authority provide the following documents (among others) referenced in its Answers to Interrogatories: (i) the Vessel's "construction plans"; (ii) the Vessel's "design approval"; (iii) the Vessel's "initial Certificate of Inspection and each Annual Certificate of Inspection"; (iv) records of the order, purchase, acquisition, and installation of the A Step 700 Non Slip Tread ("Tread"); and (v) records pertaining to any inspections, modifications, replacements, and/or repairs of the Tread. Id.[1] On September 21, 2022, Linhares sent Steamship Authority a second letter requesting among others (vi) surveillance video from the Vessel from which Steamship Authority has produced still images as part of its disclosures; and (vii) all materials pertaining to surveillance of Linhares identified in Answer 3 of the Answers to Interrogatories. Ex. E, Sept. 21, 2022 Letter [Doc. No. 60-5]. Linhares's second letter also requested that Steamship Authority contact Linhares's counsel regarding the scheduling of fourteen depositions. Id. That same day, Linhares requested in a third letter that the Steamship Authority produce the report from Linhares's September 14, 2022 medical examination. Ex. F, Sept. 21, 2022 Rule 35(b)(1) Letter [Doc. No. 60-6].

---

[1] Requests as to additional documents are not the subject of the motion to compel and accordingly, these requests and responses are not detailed here.

The Steamship Authority treated Linhares's September 16 and 21, 2022 letters as further requests for documents under Federal Rule of Civil Procedure 34. Ex. D, Sept. 25, 2022 Email 1-2 [Doc. No. 60-4]. On September 25, 2022, the Steamship Authority responded by email to Linhares in part objecting to requests (i)-(iii), (vi)-(vii) on various grounds discussed in detail below where relevant and indicating that the Steamship Authority would respond pursuant to Rule 34 as to (iv)-(v). Id. According to the record before the court, Steamship Authority still has not provided this response. In its email, the Steamship Authority noted that the parties had already scheduled depositions for four of the fourteen deponents requested and objected to the depositions of the ten individuals not yet scheduled to be deposed for various reasons. Id.

On November 8, 2022, Linhares filed the pending Motion to Compel [Doc. No. 60] Steamship Authority to produce the document and record requests listed above, eight Steamship Authority employees for depositions, and the medical report from Linhares's September 14, 2022 medical exam sought by Steamship Authority.

## II.    Discussion

Under Rule 34 "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party . . . to inspect . . .the following items in the responding party's possession, custody, or control . . . . any designated documents or electronically stored information . . . stored in any medium from which information can be obtained [] directly . . . ." Fed. R. Civ. P. 34(a)(1)(A).

"The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties' first Rule 26(f) conference." Fed. R. Civ. P. 34(b)(2)(A). If the response is an objection, "[f]or each item or category, the response must . . . state with specificity the grounds for

objecting to the request, including the reasons. The responding party may state that it will

produce copies of documents or of electronically stored information . . . . The production must

then be completed no later than the time for inspection specified in the request or another

reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B).

     A.    *The Steamship Authority's Outstanding Rule 34 Responses*

In its September 25, 2022 email, the Steamship Authority indicated that it would respond

to several of Linhares's requests pursuant to Rule 34, but on the record before the court it has not

done so. To the extent that the Steamship Authority's responses to Linhares's September 16 and

21, 2022 requests remain outstanding (and are not resolved by this Order), the Steamship

Authority shall provide its responses in accordance with Rule 34 by December 23, 2022.

     B.    *Construction Plans, Design Approval, and Certificate of Inspection*

Linhares requested in an interrogatory that the Steamship Authority "[i]dentify all safety

devices, appliances and/or equipment and/or safety procedures that were in use and/or in place at

the time of the [i]ncident, pertaining to the following: a) walking up the steps to the 01 Deck of

the Vessel; b) preventing crew members from slipping and or/being caused to fall while talking

up the steps to the 01 Deck of the [V]essel . . ." Answers to Interrogatories, Interrog. 9 [Doc. No.

60-2]. The Steamship Authority stated with respect to "a) & b) the stairway was equipped with a

handrail[], each step is provided with a non-slip tread with yellow painted stripe at the tread

nose, various lights illuminating the entire stairway, was constructed to US Coast Guard design

approval, is inspected yearly by US Coast Guard Sector personnel resulting in the issuance of a

Certificate of Inspection which permits its safe utilization as a walking surface for passengers

and crew . . ." Id.

Linhares further requested in an interrogatory that the Steamship Authority "identify any and all individuals and/or entities that you consulted with and/or any and all documents, regulations and/or guidelines that you reviewed to implement the use of all safety devices, appliances and/or equipment, safety procedures, and/or training identified in your answers to Interrogatories 9 and 10." Answers to Interrogatories, Interrog. 13 [Doc. No. 60-2]. The Steamship Authority responded in pertinent part that the Vessel is a "passenger and vehicle ferry regulated and constructed pursuant to Subchapter H-Passenger Vessel regulations issued under 46 CFR part 70. The construction plans were approved by USCG Headquarters in Washington, DC, she is inspected annually by USCG Sector Marine Inspectors before its Certificate of Inspection is issued permitting the carriage of passengers and crew . . ." Id.

Plaintiff's September 16, 2022 letter in part requested the following documents referenced in the Defendant's Answers to Interrogatories 9 and 13: (i) "[t]he [V]essel's plans, including but not limited to the 'construction plans'"; (ii) "design approval" for the Vessel; and (iii) "[t]he initial Certificate of Inspection and each Annual Certificate of Inspection." Ex. C, Sept. 16, 2022 Letter [Doc. No. 60-3].

On September 25, 2022, the Steamship Authority objected that these requests are "not relevant to the claims and defenses in this action, [are] not reasonably calculated to lead to the discovery of admissible evidence, and [are] not proportional to the needs of this alleged slip claim in that [they] call[] for the production of documents concerning parts of the Vessel having absolutely nothing to do with Plaintiff's alleged slip and fall on January 13, 2020." Ex. D, Sept. 25, 2022 Email, ¶¶ 1-3 [Doc. No. 60-4]. With respect to Linhares's request for the Vessel's certificates of inspection, the Steamship Authority conceded that the certificate inspection for the

period encompassing January 13, 2020 (the date of the incident) is relevant to the claim. Id. at ¶ 3.

In its motion to compel, Plaintiff contends that although Defendant identified the USCG design approval, certificates of inspection, and construction plans approved by USCG Headquarters as various safety devices and procedures relevant to the Vessel, Defendant has improperly refused to produce these documents where Defendant may rely on these documents to argue that the stairs were adequately maintained and Plaintiff may have to cross-examine witnesses about these documents and the Vessel's compliance without being able to review the underlying documents. Mot. to Compel 4 [Doc. No. 60]; Answer to Interrogs. 9, 13 [Doc. No. 60-2].

Despite citing these documents in response to Linhares's inquiry about Steamship Authority's safety equipment and procedures in place at the time of the incident, Steamship Authority now contends the construction plans are irrelevant and disproportionate to the needs of this case where the plans pre-date the Vessel's completion in 1974 and the plans detail the Vessel's hull, framing, structure, decks, and other areas, but not the tread on the step at issue. Opp'n 3 [Doc. No. 61]. Steamship Authority further contends that the Vessel's design approvals are irrelevant and disproportionate for similar reasons. Id. at 4.[2] With respect to the certificates of inspection, Steamship Authority contends that the initial 1974 certificate of inspection and each annual certificate of inspection or "some forty-six years of Certificates of Inspection" will provide no information as to the tread issue. Id. (emphasis in original). Steamship Authority also

---

[2] Defendant notes that the design approval issued by the USCG should be available from the USCG through a Freedom of Information Act ("FOIA") request and thus, since both parties have the ability to secure copies of the requested evidence, the obligation to produce the document to the other party does not exist. Opp'n 4 n.2 [Doc. No. 61].

argues that production of these documents is unwarranted where Linhares had the opportunity to inspect and measure the tread, step and stairway at issue on September 16, 2022. Id. at 3.

Linhares alleges that he slipped and fell because the removable Tread was smooth and slippery after its non-skid surface had been allowed to wear down over time. Mot. to Compel 2 [Doc. No. 60]. As such, the court finds the pre-1974 construction plans for the Vessel (other than the recently produced 1973 plan showing handrail and typical tread and rise details for the Vessel's passenger stairways which reportedly has already been produced, see Opp'n 3 [Doc. No. 61]), have minimal bearing on Linhares's claims or the Steamship Authority's defenses. The court similarly finds that the USCG's design approval for the Vessel issued prior to the Vessel's completion in 1974 is irrelevant to the claims and defenses and disproportionate to the needs of the case, again, where Linahres's claims do not concern the construction of the stairs.

But where Linhares's claims turn on the alleged lack of proper maintenance to the Tread covering the stairway, the court finds that the certificate of inspection for the period including January 13, 2020—the date of the incident—and the five prior years is directly relevant to his claims, and to the Steamship Authority's defense that the certificate of inspection "permits [the stairway's] safe utilization as a walking surface for passengers and crew." Answer to Interrog. 9 [Doc. No. 60-2]. Steamship Authority admitted as much with respect to the certificate of inspection covering the period including January 13, 2020.

Accordingly, the court denies Linahres's motion to the extent it seeks the Vessel's construction plans, design approvals, and annual certificates of inspection for the periods covering January 13, 2014, and earlier, but grants the motion to the extent it seeks production of the certificate of inspection for the periods including January 13, 2015, to January 13, 2020. The court's finding that the Vessel's construction plans, design approvals (other than the recently

produced 1973 plan showing handrail and typical tread and rise details for the Vessel's passenger

stairways which reportedly already been produced, <u>see</u> Opp'n 3 [Doc. No. 61]), and certificates

of inspection for periods prior to January 13, 2015 are irrelevant to Linhares's claims cuts both

ways. Absent production of these documents, the Steamship Authority (and its experts) will not

be permitted to rely on these documents at trial.

     C.    *Documents Relating to the Tread*

     Linhares's September 16, 2022 letter requested that Steamship Authority produce

documents, including records of the order, purchase, acquisition, installation, modification,

replacement, and/or repairs, related to the Tread identified in the Answers to Interrogatories.

Mot. to Compel 6 [Doc. No. 60]. During discovery conferences, the Steamship Authority has

refused to produce the documents on the ground that they are in the possession of a third-party

vendor. <u>Id.</u>

     In his motion to compel, Linhares contends that even if such records are in the possession

of a third-party vendor that the Steamship Authority uses to perform periodic refurbishments of

the Vessel, those records are in the Steamship Authority's "possession, custody, or control"

under Rule 34(a). <u>Id.</u> at 5. Linhares further contends that these documents are "crucial" to his

understanding of the Tread in question. <u>Id.</u> at 6-7. The Steamship Authority contends that while

it can make a demand for the Tread records from the third-party vendor, such a demand does not

constitute control under Rule 34(a). Opp'n 5 [Doc. No. 61]. The Steamship Authority further

contends that because Linhares can subpoena the documents from the third-party vendor, the

Steamship Authority is under no obligation to produce them. <u>Id.</u> at 6.

     As an initial matter, the Steamship Authority has not properly objected to Linhares's Rule

34 request for the Tread-related documents where on the record before the court it appears that

the Steamship Authority has made its written objections for the first time in its opposition to the motion to compel.

Nor are the objections warranted. For purposes of Fed. R. Civ. P. Rule 34(a)(1)(A), "[t]he concept of 'control' has been construed broadly." Roy v. FedEx Ground Package Sys., Inc., 2021 WL 3727143, at *2 (D. Mass. Aug. 23, 2021), on reconsideration in part, 2022 WL 686335 (D. Mass. Mar. 8, 2022). "[A] document is 'under a party's 'control' when that party has the right, authority or ability to obtain [the] document[ ] upon demand." Merchia v. United States Internal Revenue Serv., 336 F.R.D. 396, 398 (D. Mass. 2020) (quoting Szulik v. State St. Bank and Tr. Co., 2014 WL 3942934, at *1 (D. Mass. Aug. 11, 2014). While the Steamship Authority refutes Linhares's contention that the Steamship Authority has the "right" to demand the records at issue, Opp'n 5 [Doc. No. 61], nothing in the record suggests that the Steamship Authority—as a customer of the third-party shipyard servicing the Vessel—does not have the practical ability to obtain the service-related records. See In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action"). The Steamship Authority's second argument that it is under no obligation to produce the records because Linhares could subpoena the documents from the shipyard himself is unavailing. In Shcherbakovskiy v. Da Capo Al Fine, Ltd., the Second Circuit case that Steamship Authority cites for this proposition continues on to note that "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." 490 F.3d 130, 138 (2d Cir. 2007) (emphasis added).

To the extent that Linhares's motion seeks to compel the Steamship Authority to produce documents related to the Tread, the motion is granted. As Linhares contends that he needs to review the documents in order to adequately prepare for depositions of the Steamship Authority's representatives, the Steamship Authority shall produce the documents, including records of the order, purchase, acquisition, installation, modification, replacement, and/or repairs, related to the Tread no later than January 3, 2023.

      D.     *Post-Incident Surveillance and Reports and Video of the Event*

Linhares seeks to compel the Steamship Authority to produce "surveillance materials," including "a report and photographs concerning Linhares obtained on November 8, 2021[,] and a report and video footage obtained on May 16 and May 20, 2022[,] . . . issued by Pilgrim Security and Consulting LLC," referenced in Answer 3 to the Answers to Interrogatories, and the surveillance video from which the Steamship Authority produced still images as part of its initial disclosures. Mot. to Compel 7-8 [Doc. No. 60]; Sept. 21, 2022 Letter [Doc. No. 60-5] (requesting the surveillance material pursuant to Federal Rule of Civil Procedure Rule 34). Linhares contends further that the Steamship Authority has video of the event that the Steamship Authority has refused to produce. Mot. to Compel 8 [Doc. No. 60]. The Steamship Authority contends that the request is moot because it has produced "a post-incident surveillance video" of Linhares since he filed the motion to compel. Opp'n 6 [Doc. No. 61].

      1.     Videos and Photographs

The record is unclear as to whether there is one or more post-surveillance videos. See Answers to Interrog. 3 [Doc. No. 60-2] (referencing "video footage obtained on May 16 and May 20, 2022" and "visual recordings"). To the extent the Steamship Authority has produced all post-incident surveillance videos, it shall supplement its Rule 34 response to so state. To the extent

that the Steamship Authority has post-incident surveillance video, photographs, or video of the event that it has not yet produced, the motion is granted. The court orders Steamship Authority to produce the photographs concerning Linhares obtained on November 8, 2021, any further post-surveillance video, and any video of the event no later than January 3, 2023.

        2.      Investigative Reports

"The court . . . is reluctant at this time to order the production . . . of the written surveillance reports prepared for Defendant's counsel by his investigators." Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 228-29 (D. Mass. 2006). "The work-product doctrine provides that attorney work-product is discoverable only upon a showing of 'substantial need' and an inability to obtain the substantial equivalent 'without undue hardship.'" Id. (citing Fed. R. Civ. P. 26(b)(3)). "The doctrine creates a form of qualified immunity from discovery for such materials, but does not label them 'privileged' and, thus, outside the scope of discovery under Rule 26(b)(1)." Id.

"Work-product protection, however, is limited to 'documents and tangible things.'" Id. "It does not prohibit the discovery of underlying facts." Id. "Thus, the observations of Defendant's investigators, as well as relevant information with respect to the mechanics of the surveillance, are fair game for inquiry." Id.

In light of the work-product protection, the court will not order production of the reports at this time. Linhares may, however, depose the investigators as to the underlying facts and mechanics of the surveillance. The court suggests that the parties may be able to avoid the expense of these depositions through the agreed upon production of any reports setting forth the underlying facts and the mechanics of surveillance, with attorney work product redacted.

E.    *Depositions*

Linhares seeks to take Defendant's 30(b)(6) deposition and the depositions of eleven of its employees. Defendant has agreed to four of these depositions,[3] and objects to the remaining eight.[4] Linhares also seeks to take the depositions of two additional non-employee witnesses.[5]

Plaintiff asserts that the eight employees of the Steamship Authority at issue are "crewmen, able bodied seamen, and/or maintenance personnel responsible for the condition of the [V]essel." Mot. to Compel 9 [Doc. No. 60]. Linhares contends that he expects the Steamship Authority "will argue to the jury that there have been no other accidents, no other slipping events, and/or no other complaints about the worn down non-skid surface of the [V]essel's [treads] . . . [and] [t]he depositions of these individuals [are] necessary to establish whether or not this defense is factually accurate." Id. The Steamship Authority contends that the additional eight depositions sought would cause the total number of depositions conducted by Linhares to exceed Rule 30(a)'s ten deposition limit without leave of court, and that Linhares failed to make a particularized showing that he is entitled to the additional depositions. Opp'n 7-9 [Doc. No.

_____

[3] The parties have agreed on the depositions of Captain Duane, Mark Amundson, Phil Ricardo, and the 30(b)(6) deposition. See Ex. D, Sept. 25, 2022 Email [Doc. No. 60-4]

[4] The remaining eight employees are: Robert Stewart; Carl Walker; Josh Marshall; Stephen Clifford; Neal Kanter; Philip Rabesa; Antonio Cruz; and William Shaw. Mot. to Compel 9 [Doc. No. 60].

[5] The non-employee witnesses are Kayliegh Beauregard and Janine Keneally. Mot. to Compel 3 [Doc. No. 60]. Linhares reports that the Steamship Authority contends the two are employed by third parties and that Linhares has issued notices of depositions and subpoenas under Rule 45. Id. Linhares asks further that "the Court compel this response" but does not identify what response he seeks. Id. To the extent that Linhares seeks an order compelling Defendant's response, the motion does not provide a sufficient basis for any such order. To the extent that Linhares seeks an order compelling the attendance of these subpoenaed individuals at their depositions, without additional information the court cannot discern whether the two individuals' responses to the subpoenas are due, and cannot serve as a vehicle to compel the individuals provide information. Accordingly, Linhares's request as to those two individuals is denied without prejudice.

12

61]. The Steamship Authority also takes issue with Linhares's contention that the eight depositions are "necessary" to establish whether or not the Steamship Authority's anticipated defense is factually accurate where the responsibility to maintain the Vessel is not limited to these eight individuals, information regarding whether or not there have been reports of other slip and falls on the Vessel's stairways or complaints concerning the stair treads could be obtained in a more convenient and less burdensome manner, and that eight additional depositions is disproportionate to the needs of this case as well as overly burdensome to Steamship Authority. Id. at 9. The Steamship Authority does not discuss the request concerning the non-employee depositions.

Rule 30(a)(2) provides, in pertinent part that: "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and the deposition would result in more than 10 depositions being taken under this rule . . . by the plaintiff[], or by the defendant[], or by third-party defendants." Fed. R. Civ. P. 30(a)(2)(A). "The party seeking to exceed the 10-deposition limit . . . bears the burden of showing a need for the discovery." Yourga v. City of Northampton, 2018 WL 1053532, at *3 (D. Mass. Feb. 26, 2018) "Another session of this court has explained that 'the purpose of the limitation in the rule is to force counsel to think long and hard about who they want to depose and to depose only those who are really important, so as to stay within the limit set by the rule . . . . courts should not freely grant relief from the limits without a showing of need.'" Id. (quoting S. F. Health Plan v. McKesson Corp., 264 F.R.D. 20, 21 (D. Mass. 2010)). "A court must limit the frequency of discovery when the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other more convenient,

less burdensome or less expensive source or when the proposed discovery is otherwise outside the scope permitted by Rule 26(b)(2)." Id.

The court declines to limit Linhares to four depositions, as suggested by the Steamship Authority, and will entertain a motion to compel up to a total of ten depositions if Linhares identifies the ten deponents and the Steamship Authority declines to produce its employees or a non-party deponent refuses to comply with a subpoena. To the extent that Linhares argues that more than a total of ten depositions is necessary, the motion is denied where Linhares has failed to make a particularized showing as to the relevance of the testimony of each individual deponent. Moreover, to the extent that Linhares is seeking to compel the depositions of the non-employee witnesses, Linhares has not provided any basis for this court to conclude that those witnesses have not responded to the subpoena or are refusing to attend their noticed depositions, that notice of the motion was served on them or that Linhares's counsel has conferred or attempted to confer with them in an effort to obtain their attendance without court action as required under Fed. R. Civ. P. 37(a)(1).

F.    *Dr. Siliski's Report*

Linhares also seeks to compel production of the Independent Medical Examination ("IME") from Dr. John Siliski's examination of Linhares on September 14, 2022. Mot. to Compel 9 [Doc. No. 60]. Under Rule 35(b)(1), in pertinent part, "[t]he party who moved for the examination must, on request, deliver to the requester a copy of the examiner's report . . . . The request may be made by the party against whom the examination order was issued or by the person examined." Fed. R. Civ. P. 35(b)(1). The Steamship Authority informs the court that Siliski's IME report was produced to Linhares on December 12, 2022. See Dec. 13, 2022 Letter [Doc. No. 62]. Thus, the court denies this request as moot.

### III.    Conclusion

For the foregoing reasons, Linhares's <u>Motion to Compel</u> [Doc. No. 60] is GRANTED IN PART and DENIED IN PART. Specifically,

- With respect to the Vessel's construction plans and design approval, the motion is denied.

- With respect to the Vessel's certificates of inspection, the motion is denied for the periods covering January 13, 2014, and earlier, but is granted as to the production of certificates of inspection for the periods including January 13, 2015, to and including January 13, 2020. The documents shall be produced no later than January 3, 2023.

- With respect to the documents related to the Tread, including records of the order, purchase, acquisition, installation, modification, replacement, and/or repairs, the motion is granted and the documents shall be produced no later than January 3, 2023.

- With respect to the surveillance materials, to the extent the Steamship Authority has produced all post-incident surveillance videos, it shall supplement its Rule 34 response to so state. The motion is granted as to any additional post-incident surveillance videos and any video of the event that the Steamship Authority has not yet produced. The Steamship Authority shall produce the photographs concerning Linhares obtained on November 8, 2021, any further post-surveillance video, and any video of the event no later than January 3, 2023.

- With respect to the depositions, the motion is denied without prejudice to a renewed motion if Linhares is prevented from taking ten depositions.

- With respect to the IME report from Dr. John Siliski's examination of Linhares, the motions is denied as moot.

IT IS SO ORDERED.

December 16, 2022                                        /s/ Indira Talwani
                                                        United States District Judge